THERIOT, J.
|2In this indemnity dispute, the appellant, Vector Electric & Controls, Inc. (“Vector”), appeals the trial court’s ruling granting a motion for summary judgment in favor of the appellee, Honeywell International, Inc. (“Honeywell”). For the . following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
On May 9, 2014, Wholesale Electric Supply Company (“Wholesale”)[1] filed suit against Honeywell, seeking = to . enforce three liens against Honeywell in accordance with the Louisiana Private Works Act (“LPWA”), La. R.S. 9:48.01, et seq. Wholesale alleged that Honeywell had entered into a master service agreement (“MSA”) with Vector to perform general construction work at Honeywell’s chemical production facility in Baton Rouge,.Louisiana. Wholesale claimed that, as part of the MSA, Honeywell issued purchase orders to Vector for three separate projects at its facility (“the projects”). Wholesale claimed it furnished electrical supplies and materials to Vector for the projects that were subsequently incorporated into the immovable property owned by Honeywell. Wholesale alleged that despite amicable demand, it had not been paid for the supplies and materials it furnished to Vector. Wholesale claimed it therefore caused the aforementioned liens to be filed and recorded to preserve its rights. and claims against Honeywell under the LPWA.
On July 21, 2014, Honeywell filed an answer to Wholesale’s suit with an incorporated third-party demand against Vector. See La. C.C.P. art. 1111.[2] In its role as a third-party-petitioner, Honeywell acknowledged Vector had supplied it with electrical an<l instrumental goods and services for the projects that had been incorporated _J|into its property. Honeywell claimed that Vector was obligated to indemnify it to the extent it were found liable unto Wholesale. Honeywell claimed it was entitled to indemnification statutorily, i.e., by operation of law under the LPWA, and contractually, i.e., in accordance with the terms of the MSA, which required Vector to defend and indemnify Honeywell against any claims arising from *100 Vector’s negligence, willful misconduct, or breach of contract.
On August 7, 2014, Vector filed an answer to Honeywell’s third-party demand with an incorporated reconventional demand against Honeywell. In its role as a third-party-petitioner-in-reconvention, Vector acknowledged that it had provided Honeywell with labor and materials for the projects that had been incorporated into Honeywell’s property. However, Vector also claimed that Honeywell negligently managed the projects in a manner that caused it to experience delays and labor inefficiencies. Vector asserted that as a result of Honeywell’s actions and omissions, it was unable to properly plan and perform its obligations and incurred additional costs in performing the scope of its work on the projects. Vector alleged that Honeywell was therefore liable unto it for damages for breach of contract in the total sum of $2,491,295.85.
On October 17, 2014, Wholesale filed a motion for summary judgment on the issue of its principal demand against Honeywell. Wholesale argued that Honeywell was liable unto it in the principal sum of $1,251,397.56, plus legal interest from the date of judicial demand. Before trial on the matter, Wholesale and Honeywell agreed to settle their dispute and jointly submitted a stipulated judgment on the motion for summary judgment to the trial court. Therein, Wholesale and Honeywell acknowledged their agreement as to the following: Vector owed Wholesale an outstanding balance in the sum $1,213.321.30; Vector admitted in discovery that it did not express any dissatisfaction to Wholesale with respect to the materials supplied or dispute the amounts owed to Wholesale; | .Wholesale enjoyed a private right of action against Honeywell for the outstanding balance owed to it by Vector under the LPWA; summary judgment was proper; and judicial interest on the principal demand, calculated as of February 28, 2015, totaled $38,427.38.
On March 12, 2015, the trial court signed a judgment in accordance with the stipulated judgment submitted by Honeywell and Wholesale. The trial court granted Wholesale’s motion for summary judgment; entered judgment in favor of Wholesale and against Honeywell in the principal amount of $1,213,321.30, plus judicial interest, through February 28, 2015, in the sum of $38,427.38, for a total amount of $1,251,748.68; ordered that judicial interest continue to accrue until the judgment was paid in full; and ordered the dismissal, with prejudice, of all other claims that had been raised or that could be raised by Wholesale against Honeywell.
On April 23, 2015, through its attorneys, Honeywell delivered a check to Wholesale in full satisfaction of the stipulated judgment. Thereafter, on May 5, 2015, upon the request and certification of counsel for Honeywell, the trial court signed a “Satisfaction of Judgment,” acknowledging Honeywell’s full and complete satisfaction of the stipulated judgment.
On January 29, 2016, Honeywell filed a motion for summary judgment on the issue of its third-party indemnification demand against Vector. Honeywell argued that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Honeywell prayed that the trial court issue a judgment in its favor and against Vector in the sum of $1,262,531.73, plus judicial interest. Vector opposed the motion.
On May 23, 2016, the trial court heard oral arguments from the parties on the motion for summary judgment. Following arguments on the matter, in open court, the trial court orally ruled in favor of Honeywell, reasoning that Honeywell 15was both statutorily and contractually entitled *101 to indemnity from Vector for the sums Honeywell had paid to "Wholesale to have the hens cancelled on its property.
On June 20, 2016, the trial court signed a’ final judgment in accordance with its oral ruling and for the reasons assigned in open court. The trial court granted Honeywell’s motion for summary judgment; rendered judgment in favor of Honeywell and against Vector in the principal amount of $1,262,531.73, plus judicial interest, through May 27, 2016, in the sum of $93,613.53, for a total amount of $1,356,145.26; and ordered that judicial interest continue to accrue until the judgment is paid in full. Vector now appeals.
ASSIGNMENTS OF ERROR
Vector raises the following assignments of error:
1. The trial court erred in finding that Honeywell is entitled to. LPWA indemnity from Vector when Honeywell included no evidence to demonstrate the amount sought to be indemnified was ever invoiced by or paid to Vector.
2. The trial court erred in finding that Honeywell is entitled to indemnity from Vector for a payment made to Wholesale when Honeywell’s own failure to perform and/or breach of contract caused Vector’s inability to pay.
3. The trial court erred in granting summary judgment in favor of Honeywell on the basis of LPWA indemnity despite the record evidence that establishes Honeywell owes Vector amounts that far exceed the judgment.
STANDARD OF REVIEW
In reviewing a trial court’s ruling On a motion for summary judgment,[3] we apply the de novo standard of review. See Gray v. American Nat. Property & Cas. Co., 07-1670 (La. 2/26/08), 977 So.2d 839, 844. In our review, we use the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. See Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827 (La. 5/22/07), 958 So.2d 634, 638.
DISCUSSION
In its three assignments of error, taken together, Vector disputes the correctness of the trial court’s ruling on the motion for summary judgment. Vector argues that Honeywell did not satisfy its burden on the motion for summary judgment and claims there are genuine issues of material fact that should preclude the granting of summary judgment. Vector further submits that the doctrine of compensation (or set-off) is applicable under the facts of this case and should have been applied to offset the amounts it allegedly owes to Honeywell and to defeat the motion for summary judgment. We find no merit to any of these arguments.
The LPWA was enacted to facilitate the construction of improvements on immovable property; it serves this purpose by granting certain rights to enumerated persons to facilitate recovery of the costs of their work from an owner with whom they lack privity of contract. See Jefferson Door Co., Inc. v. Cragmar Const., L.L.C., *102 11-1122 (La.App. 4 Cir. 1/25/12), 81 So.3d 1001, 1004, writ denied, 12-0454 (La. 4/13/12), 85 So.2d 1250. In pertinent part, the LPWA provides:
A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
* * ⅜
(3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
* * *
B, The claims against the owner shall be secured by a privilege on the immovable on which the work is performed.
* * *
|7F. A contractor shall indemnify the owner for claims against the owner arising from the work to be .performed under the contract. A subcontractor shall indemnify the owner, the contractor, and any subcontractor from or -through whom his rights are derived, for amounts paid by them for claims under this part arising from work performed by the subcontractor.
La. R.S. 9:4802. See generally Independent Supply Co., L.L.C. v. CSF Const., Inc., 06-1444 (La.App. 4 Cir. 3/21/07), 2007 WL 7711476, *1 (unpublished), writ denied, 07-0724 (La. 5/18/07), 957 So.2d 156 (“The [LPWA] creates a claim in favor of materialmen ... against the owner .,. and a privilege on the immovable on which the work is performed to secure payment of the movables sold that become component parts of the immovable or that are consumed on the work site.”).
In the case before us, the discrete question raised on appeal concerns Honeywell’s right to indemnification from Vector. Indemnification, in its most basic sense, simply means reimbursement. See Naquin v. La. Power & Light Co., 05-2104 (La. App. 1 Cir. 11/17/06), 951 So.2d 228, 231, writ denied, 06-2979 (La. 3/9/07), 949 So.2d 441. Indemnification is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment that ought to have been paid by the wrongdoer, then the loss should .be shifted to the party whose wrongful conduct caused the loss. See Nassif v. Sunrise Homes, Inc., 98-3193 (La. 6/29/99), 739 So.2d 183, 185.
In support of its motion for summary judgment, Honeywell argued that it was statutorily and contractually entitled to indemnification from Vector for the sums it paid to Wholesale to have the liens cancelled on its property. Honeywell attached several documents and exhibits in support of its motion for summary judgment, including, inter alia, an affidavit executed by Gerald Anderson, an employee and representative of Honeywell; an affidavit executed by Honeywell’s general counsel, Sedesh Doobay; Vector’s response to requests for admission concerning its obligations to Wholesale; a letter sent by Honeywell, through its 18attorneys, with an attached check remitting final payment of the stipulated judgment to Wholesale; and a copy of the “Satisfaction of Judgment” signed by the trial court.
In opposition, to the motion for summary judgment, Vector argued that Honeywell was not entitled to indemnification under the terms of the MSA or the LPWA. In principal part, Vector claimed that Honeywell had not borne its burden of proof on the motion for summary judgment insofar as it had not presented any evidence proving it paid “twice”- for the material and *103 supplies provided by Wholesale and used by Vector on the projects. Notably, Vector did not dispute Honeywell’s presentation of evidence proving that it had not paid all invoices submitted to it by Wholesale. Rather, Vector alleged that its non-performance was a direct result of Honeywell’s failure to pay it for additional labor, materials, equipment rentals, and overhead on the projects.- Vector claimed it bore these additional expenses in the course of its performance of the projects as a result of Honeywell’s negligent oversight and actionable breach of contract. In support of its opposition to the motion for summary judgment, Vector attached, amongst other things, an affidavit from its founder, Reynolds J. Moran, Jr., and an affidavit from Michael S. Myers, a consultant who provided expert opinion evidence regarding the extent of 'Vector’s alleged losses and damages arising from its performance of the projects.
Having reviewed the evidence admitted for purposes of the motion for summary judgment de novo, we agree with the trial court’s specific finding that Honeywell was entitled to indemnification from Vector based upon the statutory right to indemnification set forth in La. R.S. 9:4802(F).[4] Honeywell satisfied its burden of proof on the motion for summary judgment by submitting wholly Ipuncontroverted evidence proving that Vector owed Wholesale an outstanding balance for supplies and materials incorporated into-Honeywell’s immovable property in the sum of $1,213,321.30, and proving that Honeywell paid the outstanding balance owed. by Vector to Wholesale, in accordance with the terms of the stipulated judgment, in the sum of $1,258,391.03.[5] Thus, we cannot say that the trial court, erred in determining that there were no genuine issues of material fact and that Honeywell was entitled to judgment as a matter of law.
In rendering our decision on this point, we recognize that Vector presented some evidence in opposition to the motion for summary judgment that appears relevant to the issue of Honeywell’s alleged mismanagement of the project. Vector maintains on appeal that the opposition evidence was sufficient to establish genuine issues of material fact as to Honeywell’s third-party demand for indemnification, but we find this evidence is not germane to the issue of indemnification under the LPWA. For example, in his affidavit, Mr. Moran testified that Honeywell failed to appropriately' manage the scheduling and coordination of work on the projects and did not pay Vector for amounts owed under the original contract, approved change orders, and change order requests. Mr. *104 Moran therefore attested that Honeywell had not paid “twice” for the materials provided to Vector by Wholesale.
Nevertheless, in spite of the arguments presented by Vector in brief, we have not discovered any legal support for Vector’s continued assertion that the LPWA requires an owner of immovable property to prove it made duplicative payment and/or to prove it bears no distinct contractual or tortious liability to a contractor before invoking its statutory right to indemnification against the contractor | ^pursuant to La. R.S. 9:4802(F). Indeed, to the contrary, the plain language of the LPWA imposes a clear requirement upon a contractor to indemnify an owner for any claims against the owner arising from the work to be performed under a contract, including, for example, a claim brought against the owner by a material seller to secure the price of movables sold to the contractor that were incorporated into the property. See La. R.S. 9:4802(A)(3), (B), and (P).
Furthermore, although Vector argues on appeal that the doctrine of compensation should be applied to defeat the motion for summary judgment, compensation does not apply in relation to the sums sought by Vector in its reconventional demand. Compensation takes place by operation of law when two persons owe to each other sums of money or quantities or fungible things identical in kind, and these sums or quantities are liquidated and presently due. La. C.C. art. 1893.
This court has previously explained that a claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. See Buck’s Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1 Cir. 2/16/01), 808 So.2d 428, 431-32. Thus, a disputed debt is not liquidated and cannot be admitted as susceptible of compensation, unless the one who asserts compensation has in hand the proof of the existence of the disputed debt and' is thus in a position to prove it promptly. See Independent Living Center, Inc. v. State, Dept. of Soc. Services, 93-0776 (La. App. 1 Cir. 6/24/94), 638 So.2d 1202, 1205. Here, since the sums purportedly due to Vector remain pending and in dispute before the trial court, Vector is not presently entitled to the benefits of the doctrine of compensation.
DECREE
For the foregoing reasons, the trial court’s ruling granting the motion for summary judgment in favor of the appellee, Honeywell International, Inc., and 1 uordering the appellant, Vector Electric & Controls, Inc., to indemnify Honeywell in the principal amount of $1,262,531.73, along with judicial interest is affirmed. All costs of this appeal are assessed to Vector Electric & Controls, Inc.
AFFIRMED.

. Wholesale is not a party to this appeal, which exclusively concerns the trial court’s summary judgment adjudication of Honeywell's third-party demand against Vector.

. Louisiana Code of Civil Procedure art. 11.11 allows a defendant in a principal action to bring in a third person, including a codefen-dant, who is his warrantor, or who is or who may be liable to him for all or part of the principal demand; thereafter, the third-party defendant may reconvene against the plaintiff in the principal action or the third party plaintiff, on any demand arising out of or connected with the principal demand, in the manner prescribed in La. C.C.P. arts, 1061—66.

. Louisiana Code of Civil Procedure art. 966, regarding summary judgment, was amended and reenacted by La. Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The legal standard to be used by the courts in granting a motion for summary judgment remains unchanged by the recent legislative amendments to Article 966. See La. C.C.P. art. 966, cmt. (b) (2015).

. In light of our conclusion that Honeywell was entitled to judgment as a matter of law on its demand for indemnification under the applicable statutory law, we decline to consider whether Honeywell was also entitled to judgment as a matter of law under the contractual indemnification clause of the MSA, which, as acknowledged by Honeywell on appeal, is dependent upon a finding that the sustained loss arose from, resulted from, or occurred in connection with Vector’s negligence, willful misconduct, or breach of contract.

. Here, we note that the statutory right to indemnification established by La. R.S. 9:4802(F) requires a subcontractor to indemnify the owner, the contractor, and/or any subcontractor from or through whom his rights are derived "for amounts paid by them for claims under this part....” Furthermore, we recognize that the amount paid by Honeywell to Wholesale in satisfaction of the outstanding debt in. this case included certain sums for fees arid costs. Insofar as Vector does not challenge the amount paid by Honeywell to Wholesale in satisfaction of the outstanding debt' on appeal, we decline to consider herein what specific sums may be awarded to an owner, contractor, or subcontractor pursuant to La. R.S, 9:4802(F).